*In re* PETITION TO DISSOLVE AND DISCONTINUE THE NILES PARK DISTRICT ([Petitioners] *In re* Petition to Dissolve and Discontinue the Niles Park District and Have its Property and Functions Vest in and be Controlled by the Village of Niles, Petitioners-Appellees, v. The Niles Park District *et al.*, Objectors-Appellants).[1]

First District (2nd Division)   No. 1—92—2971

Opinion filed February 23, 1993.—Rehearing denied April 29, 1993.

---

[1]The caption has been amended to reflect the positions of the parties on appeal.

Michael E. Lavelle, of Oak Park, and Gabriel S. Berrafato, of Morton Grove, for appellants.

Kolpak & Lerner, of Niles (Jeffrey M. Lerner and Paul A. Kolpak, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Objectors-appellants Niles Park District, Carol Panek, Marlene Bozek, James Pierski and Bud Skaja (objectors) appeal from a circuit court judgment that certified a referendum which called for the dissolution of the Niles Park District (park district) and for its assets to be vested in the Village of Niles (Niles). The referendum was presented to the electorate during the November 3, 1992, election, on which it voted affirmatively. On review, the issues presented include whether the circuit court erred in certifying the referendum, because the petition failed to meet statutory prerequisites, and whether petitioners failed to publish the proper notice of intent, thereby rendering the petition void for that reason as well. For reasons which follow, we affirm in part and reverse and remand in part.

On July 1, 1992, 276 legal voters residing within the park district filed a petition in the circuit court of Cook County seeking certification of a referendum to decide whether the park district should be dissolved and its property vested in Niles. The question was presented in the following form:

"SHALL THE NILES PARK DISTRICT WHICH IS SITUATED WHOLLY WITHIN THE CORPORATE LIMITS OF THE VILLAGE OF NILES BE DISSOLVED PURSUANT TO THE PROVISIONS OF ILLINOIS REVISED STATUTES, 1989, CHAPTER 105, SECTION 13—8 AND ALL PARKS AND ALL OTHER PROPERTY OWNED OR CONTROLLED BY THE NILES PARK DISTRICT VEST IN AND BE CONTROLLED BY THE VILLAGE OF NILES?"

The petition was filed pursuant to section 13—8 and, by reference, section 2—1 *et seq.* of the Park District Code (Ill. Rev. Stat. 1991, ch. 105, pars. 13—8, 2—1 *et seq.*) (Park District Code). Attached to the petition was a map, admittedly copied from a street guide, endeavoring to describe the territory involved. Pursuant to section 28—2(g) of the Election Code (Ill. Rev. Stat. 1991, ch. 46, par. 28—2(g)) (Election Code), petitioners also filed an affidavit of notice of intent to petition and an affidavit of publication.

The circuit court set a public hearing for August 31, 1992, to identify any impediments preventing the referendum from being placed on the November 1992 ballot. On July 24 and August 13 of 1992, verified objections were filed and the objectors moved to strike and dismiss the petition pursuant to section 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—619). Objectors challenged the petition's validity on 12 grounds, five of which are relevant to this appeal: (1) the petition should have been brought pursuant to section 13—1 of the Park District Code, which requires the signatures of at least 20% of the district's legal voters, rather than section 2—2, which requires only 100 of such signatures; (2) the public question presented did not meet the requirements of section 13—2 of the Park District Code; (3) the signed petition failed to clearly define the park district territory involved, as required by section 2—2 of the Park District Code; (4) the petition did not contain a plat survey as required by section 2—3 of the Park District Code; and (5) petitioners failed to publish the proper notice of intent, thereby rendering the petition void.

After the hearing, the circuit court overruled all objections, finding that petitioners "properly alleged the requisite elements required by section 13—8," and that petitioners served the proper notice. Consequently, the court ordered the referendum certified for the November 3, 1992, election. The election took place and the voters voted

"yes" to the above-quoted question. This appeal seeks to overturn that result.[2]

# I

Objectors' principal contention is that the circuit court erred in finding that the petition met the requirements of the Park District Code and the Election Code, and, therefore, in certifying the referendum.

Petitioners and objectors agree that the Park District Code applies. (Ill. Rev. Stat. 1991, ch. 105, par. 1—1 *et seq.*) They further agree that section 13—8 of the Park District Code provides a method of dissolution applicable to a park district that is situated entirely within the corporate limits of a village, in part as follows:

> "In addition to the *method* of dissolution provided in other sections of this Article, any park district situated wholly within the corporate limits of a city, village or incorporated town (hereinafter called a 'municipality') may be dissolved and discontinued with the consent of a majority of the legal voters of both the park district and the municipality concerned. *The vote of the people of the park district and of the municipality may be had upon like petition, proceedings and referendum as is provided in this Act for the organization of park districts.*"

(Emphasis added.) (Ill. Rev. Stat. 1991, ch. 105, par. 13—8.) One dispute centers upon the above-emphasized sentence. Petitioners maintain that this sentence allows the park district to be dissolved according to sections 2—2 and 2—3 of the Park District Code, sections that generally provide for the formation of park districts (Ill. Rev. Stat. 1991, ch. 105, pars. 2—2, 2—3). If the substantive provisions of these sections apply, the petition to dissolve the park district need only have been filed by at least 100 legal voter-residents, must have contained a plat survey of the legal boundaries to identify the territory involved, and must have been accompanied by an affidavit of notice of intent to petition and an affidavit of publication. Ill. Rev. Stat. 1991, ch. 105, pars. 2—2, 2—3.

---

[2]A direct appeal was denied by the supreme court. (134 Ill. 2d R. 302(b).) Objectors filed a motion to have an expedited appellate decision rendered in this case just before the election, to which petitioners objected on the ground that citizens of Niles should be allowed to "obtain a return on the 'fruits of their labor,' " in expending "untold sums of money and hours of volunteer time" by both sides. This court elected to allow the referendum to go forward.

Objectors contend that the emphasized sentence does not control the number of legal voters required to bring the petition. They argue that the plain meanings of the words "like petition," "proceedings," and "referendum" in section 13—8 do not relate to the number of legal voters required to bring the petition, but refer only to the required form.

■ In construing a statute, courts assume that words have their ordinary and popularly understood meanings, absent statutory definitions indicating otherwise. (*Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 510, 140 N.E.2d 698.) When statutory language is clear and unambiguous, a court's only function is to enforce the law as enacted by the legislature. (*Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 470, 452 N.E.2d 49.) In construing statutory provisions, legislative intent must be ascertained and given effect by examining the entire statute and determining the objectives the statute sought to accomplish and the evils it sought to remedy. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41, 473 N.E.2d 1313.) Where a statutory proceeding is involved, as here, "every step provided for *** must be strictly complied with subject to such qualifications as may be contained within the act *** [and] [f]ailure to comply with them cannot be excused." *City of Mattoon v. Stump* (1953), 414 Ill. 319, 325-26, 111 N.E.2d 551.

A

■ Dissolutions of park districts are governed by provisions set forth in article 13 of the Park District Code. Ill. Rev. Stat. 1991, ch. 105, pars. 13—1 through 13—9e.

Objectors argue that section 13—1 of the Park District Code controls the number of legal voter-residents required to bring the dissolution petition, which provides that a "park district may be dissolved" when "not less than 20% of the legal voters of the district" bring the petition. (Ill. Rev. Stat. 1991, ch. 105, par. 13—1 (section 13—1).) Consequently, objectors argue, approximately 2,744 voter-residents were required to bring the petition, not the 276 voter-residents who did so.

Petitioners do not dispute that a park district may be dissolved pursuant to section 13—1, but contend that section 13—1 is not mandatory and that section 2—2, to which section 13—8 makes reference, provides an additional method for the dissolution of park districts if they are wholly contained within a single municipality. Section 2—2 requires the signatures of only 100 legal voter-residents, a requirement the petition at issue met with 276 signatures. (Ill. Rev. Stat. 1991, ch. 105, par. 2—2 (section 2—2).) Although petitioners concede

that section 2—2 generally provides for the formation of park districts, they contend that section 13—8 allows section 2—2 to be used for the dissolution of a park district that is wholly contained within a municipality. We agree.

■ By its express language, section 13—8 of the Park District Code allows two different *methods* of dissolution to be followed. The two methods authorized are either (1) a petition addressed to the *board of the park district* prescribed in section 13—1, in which case "not less than 20% of the legal voters of the district" may "petition the board of the park district for submission of the question" to be certified "to the proper election officials for submission to the legal voters of the district," with other proceedings prescribed; or (2) "like petition, proceedings and referendum as is provided *** for the organization of park districts," namely, section 2—2, which permits "not less than 100 legal voters resident within the limits of such *** district" to "petition *the circuit judge* [rather than the board of the park district] *** to cause the question to be submitted to the legal voters of *** [the] district." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 105, pars. 2—2, 13—1, 13—8.) The petition here was filed in the circuit court, not before the board of the park district. Under this method, the number of signatures filed met the requirements of sections 13—8 and 2—2 of the Park District Code.[3]

The circuit court here correctly ruled that the number of signatures on the instant petition satisfied one of the methods authorized by statute.

B

Objectors next argue that the form of the public question utilized here failed to meet the requirements of section 13—2 of the Park District Code. Ill. Rev. Stat. 1991, ch. 105, par. 13—2 (section 13—2).

■ Both parties agree that section 13—2 is applicable. That section provides that the form of the proposition put to the voters "shall read substantially as follows: Shall the park district known as ........ be dissolved?"

In the present case, the public question approved by the court instead read:

"SHALL THE NILES PARK DISTRICT WHICH IS SITUATED WHOLLY WITHIN THE CORPORATE LIMITS OF

---

[3]Neither party challenges the constitutionality of any statute involved in this controversy.

THE VILLAGE OF NILES BE DISSOLVED PURSUANT TO THE PROVISIONS OF ILLINOIS REVISED STATUTES, 1989, CHAPTER 105, SECTION 13—8 AND ALL PARKS AND ALL OTHER PROPERTY OWNED OR CONTROLLED BY THE NILES PARK DISTRICT VEST IN AND BE CONTROLLED BY THE VILLAGE OF NILES?"

Where the statute requires simplicity, petitioners chose to add language which raises questions that may have been confusing and not germane to the issue. For example, what "other property" is "owned" by the Niles Park District, and what "other property" is "controlled" by it. In addition, although the caption of the lawsuit indicates that the park district's *"functions"* (emphasis added) are intended to vest in Niles, neither the petitions themselves nor the proposition put to public vote contained that language and some members of the electorate well may be surprised to learn that the parks were intended to continue their functions under different management.

The public question contained in the statute should have been limited substantially to the form set forth in section 13—2. Although standing alone the question as to form would not be deemed sufficient upon which to base reversal, upon the recurrence of the need for such a proposition the statutory form should be followed.

## C

■ Objectors further contend that the signed petition does not define clearly the territory within the park district as required by sections 2—2 and 2—3 of the Park District Code (Ill. Rev. Stat. 1991, ch. 105, pars. 2—2, 2—3 (section 2—2 or 2—3)), and claim the petition did not contain any definition of territory whatsoever.

Section 2—2 provides that the petition "shall clearly define the territory intended to be embraced in such district and the name of such proposed district." (Ill. Rev. Stat. 1991, ch. 105, par. 2—2.) Section 2—3 requires "a plat survey of the legal boundaries of the proposed district." Ill. Rev. Stat. 1991, ch. 105, par. 2—3.

Petitioners urge that the petition was sufficient because it stated that the park district is wholly contained within Niles; that section 2—2 does not require a metes and bounds description; and that the park district involved in this case consisted of miles and miles of land and would be difficult to identify.

The instant petition contained the following language:

"4. That the Park District has as its boundaries, territory which is situated entirely and wholly within the corporate limits

of Niles but said Park District boundaries are less than the entire corporate boundaries of Niles.

5. That Niles contains territory within its corporate boundaries which is not a part of the Park District, but no other general park district is located wholly within the corporate boundaries of Niles."

Further, it stated that the "legal boundaries of both the Park District and Niles are shown on the map" attached as an exhibit.

An examination of the street guide map attached to the petition reveals an area copied onto 8½ x 11 paper with largely unintelligible street names and obscure peripheral block numbers. It contains a legend of "other installations" under which are listed some 20 separate parks. The key numbers opposite these parks cannot be located correspondingly on the map. Some parks listed show the names of other municipalities with no explanation; in fact, many of these parks belong to other park districts. Further, nowhere on this street guide map is the Niles Park District mentioned, despite the petition's assertion to the contrary. An ordinary citizen cannot be expected to be equipped with his or her own clear map, or magnification paraphernalia, and a list of which parks within Niles are included and which parks are excluded from the Niles Park District. Although municipal boundary descriptions are not construed with the same strictness as required for deeds and contracts where the petition and map fairly apprise voters of the property involved (*People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 66, 177 N.E.2d 313), an obscure map and ambiguous petition language, as are involved in this case, do not meet even the relaxed standard suggested by *Ihde*.

One objector noted that some 19% of Niles residential units are situated outside the Niles Park District boundaries but within Niles. Residents of these units pay taxes as constituents of those other park districts within Niles. Such residents would be subject to double taxation, first for the parks that Niles would absorb, and second for other park districts within Niles, but not involved in the dissolution, for which they would be taxed again. They claim that they were entitled to more effective notice than that afforded here. We agree.

The street guide map utilized in this case hardly qualifies as a clear definition of territory prescribed in section 2—2, legal boundaries, or a plat survey mentioned in section 2—3 of the Park District Code. The circuit court's holding that the territorial description contained in the petition was sufficient because it gave adequate notice was in error and must be reversed.

## II

■ As their final argument, objectors maintain that petitioners failed to publish the proper notice of intent as required by section 28–2(g) of the Election Code (Ill. Rev. Stat. 1991, ch. 46, par. 28–2(g) (section 28–2(g))), because it does not contain a proper description of the territory comprising the district.

Objectors and petitioners agree that section 28–2(g) of the Election Code is applicable through section 2–2 of the Park District Code. Section 28–2(g) of the Election Code provides: "The territory proposed to comprise the new ......... is described as follows: (description of territory included in petition)." Further, the "[f]ailure to file such affidavit, or failure to publish the required notice with the correct information contained therein shall render the petition, and any referendum held pursuant to such petition, null and void." (Ill. Rev. Stat. 1991, ch. 46, par. 28–2(g).) A similar provision, that failure to comply with a mandatory requirement of a statute renders the procedure it is related to void, was upheld in *Hester v. Kamykowski* (1958), 13 Ill. 2d 481, 484-85, 488, 150 N.E.2d 196.

The foregoing argument repeats and parallels the previous arguments set forth above. We have held earlier in this opinion that the petition for dissolution did not clearly define the territory subject to dissolution. Since proper notice of intent requires a sufficient description of the territory involved, absent here, the notice of intent fails as well.

Municipal entities are creatures of the legislature and, as such, every step prescribed by statute with respect to their formation, existence and dissolution must be followed; failure to do so constitutes reversible error. (*City of Mattoon v. Stump* (1953), 414 Ill. 319, 325-26, 111 N.E.2d 551; see *People ex rel. Village of Lake Bluff v. City of North Chicago* (1992), 224 Ill. App. 3d 866, 871, 586 N.E.2d 802.) A proceeding under the Park District Code must follow the statutes which control the action; failure to require such compliance, as here, constitutes reversible error.

For the reasons aforesaid, this cause is affirmed in part, reversed in part and remanded for proceedings in consonance with this opinion.

Affirmed in part; reversed in part and remanded.

McCORMICK, P.J., and DiVITO, J., concur.