THIRD DIVISION
MARCH 31, 2008

1-07-0536

| | | |
|---|---|---|
| DOLORES DIEDRICH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 06 CH 8573 |
| THE RETIREMENT BOARD OF THE | ) | |
| ANNUITY AND BENEFIT FUND OF THE | ) | |
| CITY OF CHICAGO, | ) | Honorable |
| | ) | Sophia Hall, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

A Chicago police officer may receive pension credit for work performed prior to becoming a police officer where that previous work involved investigative work for the Chicago Police Department (Department) as a civilian employee. The petitioner, Chicago Police Officer Dolores Diedrich, appeals from a decision of the circuit court of Cook County affirming the 4 to 3 determination of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board) that the civilian work she performed for the Department as a translator did not constitute investigative work which would entitle her to pension credit. We reverse and remand for computation of petitioner's pension credit

BACKGROUND

At the hearing before the Board, petitioner and four other witnesses testified on her behalf. The Department presented no witnesses. Petitioner testified that she was appointed a member of the Department as a police officer on October 13, 1986. Immediately prior to that she had worked for the Department as a civilian Spanish translator beginning on June 7, 1972. Preparation for that job required 10 days of intensive training, as opposed to 6 months of training to be a police officer. As a civilian translator and then as a police officer she had always been assigned to the 20th Police District. According to petitioner, her main function was interpreting at the police station both in

person and on the telephone. She did not just provide literal translations from Spanish to English and English to Spanish. She was also required to initiate particular lines of questioning on occasion when the police officer seeking translation did not ask questions germane to the situation. Petitioner would also initiate follow-up questions when they seemed to be required. She would also assess the credibility of the civilians for whom she translated and relay her impressions to the police officers involved. One of the reasons that the Department used civilian translators such as the petitioner was because the Spanish-speaking officers wanted additional pay for performing such work.

The unrebutted evidence at the hearing showed that petitioner would often be the first person to speak with Spanish-speaking civilians who came into the station. She would gather initial information and determine what action to recommend to the police officers. For example, in domestic violence matters, the victims were often afraid to give details. Petitioner would have to gain their confidence and question them further to elicit details of their complaints. Petitioner also undertook duties which entailed follow-up telephone calls to seek additional information on pending cases. Petitioner stated that when she became a police officer she continued to translate for the Department. At the time of her testimony her job as a police officer was secretary to the police commander of the 20th District.

During her time as a civilian translator, petitioner would substitute for police officers on vacation in the review office. In that role she would examine confidential case reports to determine whether there were patterns indicating that one offender might be involved in more than one crime. The time petitioner spent on this task added up to about two months each year. She would then submit written reports of her conclusions to the Department.

Police Officer David Avellis testified that he also began work for the Department as a civilian translator in September of 1974 and at the time of his testimony he had been a police officer for over 29 years. He had observed the petitioner performing her duties as a translator on a daily basis. The Department used civilian translators because there were very few Spanish-speaking police officers

2

when he was hired. He estimated that out of about 500 police officers assigned to the 20th District, only 3 were Hispanic when he first started. Avellis testified without objection that, in his opinion, as a career police officer he believed the functions performed by petitioner to be investigative in nature. He noted that investigations in which she participated could not proceed without accurate translation and interpretation by her. He also testified that as she became more experienced as a translator she would initiate questions, without direct input from the police officer she was assisting. She would then tell the officer what she had asked and the response.

Chicago Police Lieutenant Michael O'Brien, who had been on the police force for 35 years at the time of his testimony, stated that he worked in the 20th District and worked with petitioner in the 1970s when he was a patrol officer. He observed petitioner in her work and worked directly with her on occasion. It was his opinion that petitioner was performing investigative duties in her translation work. He also stated that the foundation of investigations involving Spanish-speaking individuals was based on the civilian translator's translation and knowledge. Petitioner performed these translation duties on a constant basis, but with varying numbers of cases on any particular day. She might conduct six translations on one day and one or none on another day.

Chicago Police Officer Robert Johnson testified that he had been with the police force for approximately 33 years and had first worked in the 20th District in 1972. He worked with and observed the work of petitioner as she translated for victims and offenders. No investigation involving a Spanish-speaking person could truly commence until a translator such as petitioner first spoke with the individual. Indeed, the officers would not even know if an individual was an offender or a victim until that translation was performed. Often he would give petitioner the general parameters of what information he was seeking and she would then ask a series of questions. After receiving the answers petitioner would not only translate, but she would give the officer her opinion of the person's credibility and forthrightness. She would convey whether she believed the person was unsure or evasive in his or her answers.

Retired Police Officer Patrick Collins worked as a cadet and then a Chicago police officer in the 20th District from July of 1968 until his retirement in 2001. He testified that in his observation of petitioner, she would not just translate what she was told to translate, she would formulate and ask questions on her own. She did this more as she gained experience and learned what information the officers were seeking. On some occasions she would take a complete report on her own without the assistance of an officer and then present that report to the officer. It was Officer Collins' opinion that these duties were investigative in nature. The Department did not present any rebuttal evidence.

At the conclusion of this hearing, and after further briefing and deliberation, the Board members voted 4 to 3, with one abstention, to deny petitioner the pension she sought. In its written decision, the Board omitted any mention of the specific testimony offered by the witnesses concerning the investigative work of the petitioner. Rather, the decision related only that three of the witnesses had testified that they had observed and interacted with the petitioner and believed that her services as a Spanish-speaking interpreter constituted investigative work. The decision did not note that Officer Avellis had also testified to his observations of the petitioner's work. The Board concluded that the petitioner's work as a Spanish-speaking interpreter "or the other assigned tasks [she] performed" did not constitute investigative work. The Board's written decision omitted certain crucial parts of the evidence such as the petitioner's work reviewing confidential police reports to detect patterns indicating the involvement of an offender in multiple offenses. The Board found that: the petitioner did not "systematically examine" a reported incident; did not participate in the collection of evidence; and did not determine what charges should be lodged against offenders.

Section 5-214(c) of the Illinois Pension Code provides:

> "Any participant in this fund *** who has rendered service as a
> member of the police department of the city for a period of 3 years or
> more is entitled to credit for the various purposes of this Article for
> service rendered prior to becoming a member or subsequent thereto

for the following periods:

*** 

(c) While *** performing investigative work for the [police]

department as a civilian employee of the department." 40 ILCS 5/5-

214(c) (West 2004).

In the instant case, the Board construed the term "investigate" or "investigative" as "connoting activity much more elaborate and compound than the work [petitioner] did as a police Spanish-speaking interpreter." The Board cited various dictionary definitions of these terms in support of the finding. The Board also cited Black's Law Dictionary as defining "investigate" as "to follow up step to step; to trace or track; the taking of evidence; a legal inquiry." See Black's Law Dictionary 825 (6th ed. 1990). Finally the Board found that petitioner's own testimony established that much of her work consisted of clerical and other tasks unrelated to her interpretation work and that work also did not entitle her to a pension. The circuit court affirmed on administrative review, and this appeal followed.

## ANALYSIS

The testimony in this case is undisputed. There is no indication in the record that the Board's omission of some of the critical evidence from its decision was based upon a credibility determination. Thus, the decision of the Board was based upon its construction of the law. Nonetheless we are faced with a mixed question of law and fact, for we must determine the legal effect of the undisputed facts presented to the Board. See City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). The standard of review applicable to a mixed question of law and fact is whether the determination was manifestly erroneous. City of Belvidere, 181 Ill. 2d at 205, 692 N.E.2d at 302. We will consider that determination to be manifestly or clearly erroneous only if, based on our review of the entire record, we determine that, despite some evidence supporting the decision, we still have a firm belief that the Board erred. AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 281-82 (2001); citing

5

United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 2d 746, 766, 68 S. Ct. 525, 542 (1948). As we have noted, the Board was required to determine the meaning of "investigative work."

In its written decision the Board omitted certain evidence presented by the petitioner which was critical to its determination. This included descriptions by the petitioner and police officers with whom she served regarding the manner in which her actual job duties exceeded those of a mere translator. We have outlined the unrebutted testimony of the petitioner and other experienced police officers regarding the nature of the work which she performed. Petitioner testified that she did far more than merely translate questions given to her by police officers. In her testimony, she explained that she often engaged in a series of questions of her own creation, based on her experience regarding the kind of information needed by the police. She further testified that sometimes the officers would just give her the parameters of the information they were seeking and she would ask questions on her own accord. She would on occasion question Spanish-speaking individuals and prepare reports without the presence or aid of a police officer and then submit the report to the appropriate officer for review. Petitioner also was asked by the police officers for whom she translated to independently evaluate credibility and forthrightness. She would also evaluate whether they were unsure or evasive in their answers. She would then communicate her evaluation to the appropriate police officer. In its written decision the Board also omitted any mention of petitioner's work in the case review office, evaluating confidential case reports to determine whether there were patterns linking an offender with multiple offenses.

We note that the activities which we have reviewed satisfy the definitions upon which the Board relied to reject petitioner's claim: specifically, work much more elaborate than mere translation. She participated in legal inquiries and the taking of evidence. When a court is engaged in statutory construction, words should be given their plain and ordinary meaning. In re Petition to Dissolve & Discontinue the Niles Park District, 244 Ill. App. 3d 127, 131, 614 N.E.2d 53, 55 (1993).

And we are also obligated to construe pension statutes liberally in favor of the parties whom the legislature intended to benefit. Shields v. Judge's Retirement System of Illinois, 204 Ill. 2d 488, 494, 791 N.E.2d 516, 519 (2003).

Saffold v. City of Chicago, 192 Ill. App. 3d 827, 549 N.E.2d 671 (1989) is the only published opinion interpreting section 5-214(c), which at that time read in pertinent part:

> "Any participant in this fund *** who has rendered service as a member of the police department of the city for a period of 5 years or more is entitled to credit for the various purposes of this Article for service rendered prior to becoming a member or subsequent thereto for the following periods:
>
> ***
>
> (c) While performing safety or investigative work for the County in which such city is principally located or for the State of Illinois or for the Federal government, on leave of absence from the department of police." Ill. Rev. Stat. 1987, ch. 108 ½, par. 5-214(c).

In Saffold, the plaintiffs "coordinated crime prevention activities and educational programs for low income inner-city communities" while working for the League to Improve the Community. This court affirmed the judgment of the circuit court which found that the two Chicago police officers in question performed work which constituted "safety or investigative work" to permit them to receive pension credit. Saffold, 192 Ill. App. 3d at 830, 549 N.E.2d at 673.

Our research has revealed several Supreme Court Rule 23 orders which have discussed what constitutes investigative work as described in section 5-214(c), but they of course have no precedential value under Supreme Court Rule 23(e) (166 Ill. 2d R23(e)). Williams v. Policemen's Annuity & Benefit Fund of the City of Chicago, No. 1-03-0045 (2004) (unpublished order under Supreme Court Rule 23); Nolter v. Retirement Board of the Policemen's Annuity & Benefit Fund of

1-07-0536

the City of Chicago, No. 1-01-4067 (2003) (unpublished order under Supreme Court Rule 23); Simon v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago, No. 1-97-3868 (1998) (unpublished order under Supreme Court Rule 23); Breslin v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, No. 1-95-0962 (1996) (unpublished order under Supreme Court Rule 23); Ortiz v. Berwyn Police Pension Board, No. 1-93-3580 (1994) (unpublished order under Supreme Court Rule 23).

In the instance case, as a former civilian employee of the Department, the petitioner is clearly one whom this pension statute was intended to benefit. The question is whether her work met the criteria of the statute. We find that the plain and ordinary meaning of "investigative work" includes the activities described by petitioner and four police officers in unrebutted testimony at the hearing before the Board  Thus, despite the Board's conclusion to the contrary, we hold that petitioner has presented unrebutted evidence which satisfies the provisions of section 5-214(c). Because she has met her burden of proof she is entitled to the pension credit she seeks. In light of this conclusion, we need not reach the other issue raised on appeal.

For the reasons set forth, we reverse the order of the circuit court and remand this matter for a determination of the pension credit to which petitioner is entitled.

Reversed and remanded

QUINN, P.J., and THEIS, J., concur.