Sixth Division
February 10, 2011

No. 1-10-0994

| | | |
|---|---|---|
| ESTHER COLLINS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | |
| CHICAGO, STEPHANIE D. NEELY, Trustee, STEVEN | ) | 09 CH 20737 |
| J. LUX, Trustee, GENE R. SAFFOLD, Trustee, JAMES | ) | |
| P. MALONEY, Trustee, MICHAEL K. SHIELDS, | ) | |
| Trustee, MICHAEL LAZZARO, Recording Secretary, | ) | |
| KENNETH A. HAUSER, Vice President, ROBERT F. | ) | |
| REUSCHE, President, and JOHN J. GALLAGHER, JR., | ) | |
| Executive Director, | ) | Honorable |
| | ) | Daniel A. Riley, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Garcia and Justice Cahill concurred in the judgment and opinion.

## OPINION

Plaintiff Esther Collins appeals from the circuit court's order affirming the administrative decision of defendants, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board), which denied Collins' application for pension service credits for her work as a police dispatcher aide, a civilian employee, for the Chicago police department.

On appeal, Collins argues that the Board's interpretation of section 5-214(c) of the Illinois Pension Code (40 ILCS 5/5-214(c) (West 2008)) was clearly erroneous when it held that her position as a police dispatcher aide, a civilian employee, did not qualify for credit as prior other service.

On March 20, 2009, Collins filed a letter with the Board seeking pension credit for prior

service with the Chicago police department under section 5-214(c) of the Illinois Pension Code (40 ILCS 5/5-214(c) (West 2008)). Section 5-214(c) allows members of the Policemen's Annuity and Benefit Fund to receive credit for prior service "while performing investigative work for the department as a civilian employee of the department." 40 ILCS 5/5-214(c) (West 2008). In her letter, Collins stated that she had been employed as a police officer with the Chicago police department since May 6, 1996, and was required to take mandatory retirement on April 19, 2009. Prior to her employment as a police officer, Collins worked as a police dispatcher aide with the Chicago police department from February 28, 1990, to April 30, 1996. Collins requested her years of service as a police dispatcher aide to be credited to her years of service as a police officer with the Policemen's Annuity and Benefit Fund of Chicago.

In the letter, Collins described her duties as a police dispatcher aide as follows.

"As a Police Dispatcher Aide, I was the first person involved in the police investigation. I elicited key investigative and safety information from 911 callers to determine the appropriate resources needed for police service, e.g., the nature of the emergency/incident/request/complaint, incident location, offender's description, if weapons were involved, weapon location, offender's direction of flight, offender's vehicle description, and victim's medical condition. As I was obtaining this information, I was simultaneously preparing a dispatch report for dispatch. In situations where I received 911 calls for police service that were not emergency in nature, I was vested with the discretion not to

prepare dispatch reports for police service and referred these non-police emergency calls to the appropriate City Departments or agencies. I also prepared lookout and wanted messages, and documents for dispatch of traffic, evidence technician and police crime laboratory units to scenes of emergency incidents. I was also LEADS certified as a Police Dispatcher Aide which allowed me the authority to conduct license plate and name checks. In addition, I translated Spanish speaking 911 calls for police service from Spanish to English and elicited key investigative and safety information from these Spanish speaking callers for dispatch."

On April 29, 2009, the Board conducted an administrative hearing on Collins' petition for service credits during its monthly meeting. Collins submitted multiple documents and testified before the Board. One of the documents presented to the Board was the "Job Opportunity Bid Announcement" from February 17, 1989, which described the position of police dispatcher aide. The bid announcement stated the duties of the position.

"Monitors zone and city wide communication consoles, and responds to complaints and/or request for police service from the public via the 911 system. Solicits descriptive information such as nature of complaint and location of the incident. Prepares radio dispatch cards. Prepares lookout and wanted messages and other notifications for filed units. Prepares necessary documents for dispatch of traffic, evidence technician and police crime laboratory

units to scene of incident. Coordinates request for field vehicle repair service. Receives and refers non-police related calls to appropriate City department or agency. Performs related duties as required."

Collins testified that she was "always an inside person" and she did not go outside on the street with other police officers as part of her job function. Collins stated that she would take the information from a call and "once the information was taken, [she] would hand it over to the dispatcher to be dispatched." The information was entered onto cards, which were placed into a slot for a messenger to take except if it was a high priority call, then she would hand-deliver the card to the dispatcher. Collins admitted that once she took the information, that was the end of her involvement. However, Collins stated that in some instances she would make notifications to different departments and she also ran name and license plate checks.

Collins testified that she did not work directly with members of the general public to translate Spanish. Her role was to translate calls from Spanish-speaking callers, but she did not handle individual translation requests from police officers. Collins stated that she had the discretion to decide whether to pass on information on prank calls. She also prepared lookout and wanted messages for which she would ask for information, such as, whether there were any warrants, the number where the person could be met, and whether he or she had any information for the police. Collins made notifications when requests for evidence technicians or the crime lab were made by filling out a form and then making the call. Collins stated that she did not substitute for the dispatcher if the dispatcher was sick or on a break.

When asked why she waited from 1996 to 2009 to apply for the pension service credit,

4

Collins responded, "I always thought of doing it, but I guess I just procrastinated." A Board member asked Collins if she investigated anything. She responded:

> "Well, when we received a call, we did the investigation because we would, you know, ask the caller, if it was say a person shot, where is the victim, where is the offender, what kind of weapon, was the person on drugs, where is the offender, what kind of clothing the person was wearing, the direction — if the offender had fled the scene, what direction he had fled. Yes, I think I did."

However, Collins admitted that she did not go out and investigate something from her office. Collins did not present any additional witnesses.

On May 28, 2009, at the next Board meeting, the trustees unanimously voted to deny Collins' request for pension credit for prior service. A written decision was sent to Collins on May 29, 2009. In its decision, the Board held that Collins' testimony "clearly demonstrate[d] that her function at the [Chicago police department] was to assist or initially obtain information over the phone from citizens and then to give that information to a dispatcher who would then assign an officer to investigate the call if she deemed necessary." The Board noted the appellate court decision in *Diedrich v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 381 Ill. App. 3d 305 (2008), but found it distinguishable from Collins' case.

> "The Collins's [*sic*] record, unlike Diedrich, does not involve a civilian employee who, a) went on the street with officers to assist in their investigation; b) engaged in citizens in [*sic*] a series of questions of her own creation, or on her own accord; c) did not

5

evaluate whether individuals were unsure or evasive in their answers; d) was not asked to evaluate credibility and forthrightness; e) did not communicate her evaluation to the appropriate officer; and f) did not prepare reports as part of the on-going investigation."

The decision concluded that Collins "took a report which may have prompted an investigation but she did not participate in the investigation." She "was not a person who performed 'investigative' work." The Board also held that the doctrine of *laches* barred Collins from attempting to assert her claim because she was eligible to seek this prior credit in 1996, but waited until 2009 to petition the Board.

In June 2009, Collins filed a petition for administrative review of the Board's decision in the circuit court. In March 2010, following briefing and arguments by the parties, the circuit court affirmed the Board's decision and denied Collins' petition.

This appeal followed.

On appeal, Collins argues the Board erred in concluding that she did not perform "investigative work" as required by section 5-214(c) in her duties as a civilian police dispatcher aide for the Chicago police department.

When a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision. *Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). The Administrative Review Law provides that judicial review of an administrative agency decision shall extend to all questions of law and fact presented by the entire

6

record before the court. 735 ILCS 5/3-110 (West 2008). Further, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2008). "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)).

"A mixed question of law and fact asks the legal effect of a given set of facts." *Comprehensive Community*, 216 Ill. 2d at 472. Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated. *AFM Messenger*, 198 Ill. 2d at 391. Here, the question of whether Collins' duties as a police dispatcher aide constituted "investigative work" under section 5-214(c) to receive pension credit presents a mixed question of law and fact. A mixed question of law and fact is reviewed under the clearly erroneous standard. *Comprehensive Community*, 216 Ill. 2d at 472.

The clearly erroneous standard of review lies between the manifest weight of the evidence standard and the *de novo* standard, and as such, it grants some deference to the agency's decision. *AFM Messenger*, 198 Ill. 2d at 392. "[W]hen the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a

mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Nonetheless, that the clearly erroneous standard is largely deferential does not mean, however, that a reviewing court must blindly defer to the agency's decision. *AFM Messenger*, 198 Ill. 2d at 395.

Section 5-214(c) provides, in relevant part:

"Any participant in this fund (other than a member of the fire department of the city) who has rendered service as a member of the police department of the city for a period of 3 years or more is entitled to credit for the various purposes of this Article for service rendered prior to becoming a member or subsequent thereto for the following periods:

\* \* \*

(c) While performing safety or investigative work for the county in which such city is principally located or for the State of Illinois or for the federal government, on leave of absence from the department of police, or while performing investigative work for the department as a civilian employee of the department." 40 ILCS 5/5-214(c) (West 2008).

The cardinal rule in construing a statute, to which all others are subordinate, is to ascertain and give effect to the intent of the legislature. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). To determine legislative intent, we turn to the language of the statute, which is the best indicator

of its intent. *Alvarez*, 229 Ill. 2d at 228. We must give the statutory language its "plain, ordinary, and popularly understood meaning," and "[w]here the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Alvarez*, 229 Ill. 2d at 228. "[A]ll words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation." *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Brucker*, 227 Ill. 2d at 514.

We point out that the term "investigative work" as used in section 5-214(c) has not been defined by the legislature. "It is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (2009). "Investigate" is defined as "to observe or study by close examination and systematic inquiry," "to make a systematic examination," and "to conduct an official inquiry." Webster's Ninth New Collegiate Dictionary 636 (1985). Additionally, Black's Law Dictionary defines "investigate" as "to inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry" and "[t]o make an official inquiry." Black's Law Dictionary 830 (7th ed. 1999).

Collins contends that her duties as a police dispatcher aide were investigative and relies on the decision in *Diedrich v. Retirement Board of the Policemen's Annuity &Benefit Fund*, 381 Ill. App. 3d 305 (2008), for support. In *Diedrich*, the plaintiff sought pension credit under section 5-214(c) for the years she worked as a civilian Spanish translator for the Chicago police department. As a translator and later as a police officer, the plaintiff was assigned to the 20th police district.

At the hearing before the Board, the plaintiff testified that her duties were: (1) to interpret at the police station both in person and on the telephone, (2) to initiate particular lines of

9

questioning on occasion when the police officer seeking translation did not ask questions germane to the situation, (3) to initiate follow-up questions when they seemed to be required, and (4) to assess the credibility of the civilians for whom she translated and relay her impressions to the police officers involved. The plaintiff also would substitute for police officers on vacation in the review office and would then "examine confidential case reports to determine whether there were patterns indicating that one offender might be involved in more than one crime" and submit her findings to the department. She estimated that she spent two months of the year on this task. *Diedrich*, 381 Ill. App. 3d at 306-07.

The plaintiff also presented the testimony of four police officers. Each of the officers testified that the plaintiff's duties were investigative in nature because the investigations needed the plaintiff's accurate translations, her ability to initiate questions and her opinion about a person's credibility. *Diedrich*, 381 Ill. App. 3d at 307-08. The Board voted 4 to 3 to deny the plaintiff's pension credit, concluding that the plaintiff's work did not constitute investigative work. The circuit court affirmed the Board's ruling. *Diedrich*, 381 Ill. App. 3d at 309.

On appeal, the reviewing court found that the plaintiff did "work much more elaborate than mere translation. She participated in legal inquiries and the taking of evidence." *Diedrich*, 381 Ill. App. 3d at 310. The *Diedrich* court reversed the Board's denial.

> "In the instance case, as a former civilian employee of the
> Department, [the plaintiff] is clearly one whom this pension statute
> was intended to benefit. The question is whether her work met the
> criteria of the statute. We find that the plain and ordinary meaning
> of 'investigative work' includes the activities described by [the

plaintiff] and four police officers in unrebutted testimony at the

hearing before the Board." *Diedrich*, 381 Ill. App. 3d at 311-12.

In the present case, Collins highlights the *Diedrich* court's emphasis on the unrebutted

testimony and asserts that the same is true in this case as her testimony was unrebutted.

However, the substance of Collins' testimony and evidence, specifically, her duties as a police

dispatcher aide, are the determining factor here, not the unrebutted nature of her evidence.

We find the Board's conclusion that Collins' position as a police dispatcher aide did not

constitute "investigative work" was not clearly erroneous. Unlike the plaintiff in *Diedrich*, Collins

here was not asked to translate police questions, to initiate lines of questioning, or to assess

credibility. Instead, Collins wrote down information from a 911 call and passed that information

on to the dispatcher. As the bid announcement for a police dispatcher aide state, Collins solicited

"descriptive information such as nature of complaint and location of the incident" and prepared

"radio dispatch cards." She did not follow up with police officers in the investigation. While

Collins did ask the callers specific questions, those questions involved preliminary information:

What happened? What location? Where is the victim? Where is the offender? Once Collins

prepared her card and passed it to the dispatcher, her role was complete. She testified that she

did not go out on emergencies; her job was inside. Collins' role as a police dispatcher aide was

not to make a systematic inquiry or examination to gather evidence of a crime; rather, she

prepared an initial response card for police and on occasion fulfilled requests for name and license

plate information or prepared requests for evidence technicians or police crime laboratory units to

be sent to the scene of an emergency.

The plaintiff in *Diedrich* participated in legal inquiries and helped to gather evidence

11

whereas Collins as a police dispatcher aide did neither. In *Diedrich*, the plaintiff had the authority to formulate her own lines of questioning for the police officers and the police relied on her opinion of a person's credibility. Further, the plaintiff spent approximately two months a year substituting for a police officer to examine case files to detect a pattern to help determine whether an offender committed another crime. See *Diedrich*, 381 Ill. App. 3d at 306-07. In contrast, Collins testified that she did not substitute when the dispatcher was on vacation or sick. Instead, Collins' position was to transfer the information received from a 911 caller to the dispatcher who would relay that information to the investigating police officers. Based on our review of the record, including Collins' testimony and documentary evidence, we cannot say that we are left with the definite and firm conviction that a mistake has been committed in the Board's decision to deny Collins' request for pension credit. As a police dispatcher aide, Collins did not perform "investigative work" as required for the pension credit under section 5-214(c).

Since we have concluded that Collins does not qualify for the pension credit, we need not address the remaining claim that Collins' request was barred by laches.

Based on the foregoing reasons, we affirm both the findings of the Board and the decision of the circuit court of Cook County.

Affirmed.